## Deutsch-Amerikanischer Volksfest-Verein.

*Corporations — Charters — Clubs—Name in foreign language—Act of April* 29, 1874, *P. L.* 73, *sec.* 2.

The absence of necessity for a charter for a purely social club is no valid reason for refusal of a charter.

It is no valid reason for refusing a charter that the name of the proposed corporation is in a foreign language.

Argued March 25, 1901. Reargued May 8, 1901. Appeal, No. 350, Jan. T., 1900, by Deutsch-Amerikanischer Volksfest-Verein, from order of C. P. No. 1, Phila. Co., June T., 1900, No. 1119, refusing application for a charter. Before McCOL-LUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed. MESTREZAT., J., dissenting.

Application for charter.

George W. Reed, Esq., to whom the application was referred as master, reported the facts to be as follows:

The proposed charter for the Deutsch-Amerikanischer Volks-fest-Verein is evolved from and grows out of an unincorporated society of the same name, over five years old and having the same social and charitable ends in view. This old society is composed of persons of German and American birth, a majority being citizens of Pennsylvania. They meet together (and what is true of the old society is equally true of the proposed society, for which application for charter is now made) monthly or oftener as they see fit for social intercourse with their wives and families; at none of these meetings is any spirituous or malt liquor used, dispensed or sold.

The funds of the society are derived from annual dues, dona· tions, etc., and are used, after paying running expenses, for charitable purposes only. There is a committee on charities, before whom any case of sickness or destitution must be brought; said committee examines into the same and relieves it, if worthy, to the extent of $5.00; any sum beyond that must be authorized by the board of directors. In these charitable donations members have no preference over strangers. No benefits are allowed to sick, or to the families of deceased members. No assessments are made on members and no stock is issued by

the society.  The members appearing before me (and all those above-mentioned were members) seemed respectable, in both appearance and manner; the sole object of the society, viz: social intercourse and dispensation of charity, are most praise-. worthy and must be of great value to the community.

Your master therefore recommends that the application be granted and the charter approved.

The court refused the charter on the ground, first, that there was no necessity for it, and second, that the title was in a foreign language.

*Error assigned* was the order of the court.

*P. A. Wildermuth,* for appellant.—The act is mandatory, and if the instrument is in proper form, and the purpose lawful and not injurious to the community, the court has no right to refuse a charter: Oakland Cemetery Company, 12 Pa. C. C. Rep. 145.

The testimony taken by the master upon the application for incorporation to the court below shows a substantial compliance with all of the conditions of the act, except that of showing a necessity which is not prescribed nor required by the act, and the court in refusing this charter, because in its opinion the applicants did not show a necessity for incorporation, exercised an arbitrary and not a judicial discretion: Donoghue's License, 5 Pa. Superior Ct. 1.

The title to a charter, or the name of a corporation, is a mere designation, and does not form such a part of the charter as to become more than the name by which it desires to be known, the title itself does not confer any power upon a corporation, other than those contained wholly in the articles which set forth its objects and purposes.  In the Applications of the Central Democratic Association, and Young Republican Club of the Thirtieth Ward, 8 Pa. C. C. Rep. 393.

OPINION BY MR. JUSTICE MITCHELL, July 17, 1901:

Appellants, members of an unincorporated society, applied for a charter, setting out that " the purposes for which the corporation is formed are to encourage social intercourse among its members and their families, to accumulate a fund by gifts and dues of its members, and to apply the said fund for the re-

lief of its members and their families, and to other charitable purposes."

A master to whom the application was referred, reported that the application was in proper form, the purposes within those named in the first class under section 2 of the Act of April 29, 1874, P. L. 73 ; and further, specifically, that no liquor was sold or used at the meeting ; that the annual dues, after payment of running expenses, were used for charitable purposes, in which members had no preference over strangers ; that no assessments were made on members and no benefits were allowed to sick members, or to the families of members deceased. He therefore recommended the granting of the charter.

These specific findings of facts, though not strictly called for by the application, are useful as negativing any inference that the proposed corporation was an evasion of the liquor laws, the laws regulating beneficial or insurance associations, etc.

The court below, however, refused to approve the charter, on the grounds, first, that no necessity was shown for incorporation, and secondly, that the title was in a foreign language.

The privilege of incorporation, and the requirements to obtain it, are wholly statutory. The courts are not entitled to grant or refuse the right except upon legal grounds, and the requirements fixed by law can neither be dispensed with, nor added to. Section 2 of the Act of April 29, 1874, P. L. 73, authorizes charters of incorporation, "for the maintenance of a club for social enjoyments." The court undoubtedly may and should look into the nature of the proposed social enjoyment, to see that it is "lawful and not injurious to the community," and may require specific statements and evidence to that end. But necessity is not one of the requirements, and it is doubtful if it ever could be shown in the case of purely social clubs. To require it therefore would be practically to repeal that clause of the statute. The appellants, as it appears, have carried out the same sociable and charitable purposes, successfully, for five years without a charter, but if they are now of opinion that their interests, their convenience or their mere pleasure would be better served by incorporation they are entitled to it under the statute, and the absence of necessity for it, is not a valid reason for refusal of a charter.

Nor, secondly, is the expression of the title in a foreign lan-

guage, a valid reason for the refusal of a charter. There is no requirement in the statute that the title shall be in English. Courts under the common law though their official language is English, have always administered rights under contracts, deeds, or wills in foreign languages. And in no state has the usage been more liberal than in Pennsylvania where for many years and until quite recent times, the laws and public advertisements were officially printed in German as well as in English.

The charter when approved is directed by the act of 1874 to be recorded in the office for the recording of deeds, and may therefore fairly come within the Act of May 31, 1893, P. L. 188, requiring that every will, deed, mortgage, agreement, or any other written or printed instrument, presented for record, in any other than the English language, shall be accompanied by a sworn translation in English, which shall be filed or recorded as the law may require, with the original. This is a statutory recognition, if not a sanction, of the use of a foreign language in charters as well as other legal instruments. The court of course has power to require a translation for its own information in the inquiry into the lawfulness, or injuriousness to the community, of the submitted instrument, but that is the extent of its authority in this requirement.

Judgment reversed and charter directed to be approved, unless otherwise appearing to be injurious to the community.

MESTREZAT, J., dissents.