## Perry Council No. 57, O. U. A. M., v. Robinson, Prothonotary.

*Corporations of first class—Application for charter—Filing of proposed charter before application — Delivery of charter to the corporation after recording—Act of April 29, 1874.*

1. Under the Act of April 29, 1874, P. L. 73, a charter of a corporation of the first class, which has been approved by the court and recorded in the office of the recorder of deeds, should be delivered to the solicitor of the corporation, to be delivered by him to its proper officer.

2. The proposed charter ought to be lodged in the prothonotary's office subject to public inspection, during the whole time of advertisement of notice of the application. After that period, when the application has been approved and recorded, it should be delivered to its owner, the corporation.

3. The statute does not make the charter a part of the record of the court.

Rule to show cause, etc.  C. P. Perry Co., Jan. T., 1921, No. 154.

*B. F. Umberger*, for petitioner.

*Luke Baker* and *Walter W. Rice*, for respondent.

BARNETT, P. J., Aug. 3, 1921.—There was presented to the court, under the provisions of the Act of April 29, 1874, P. L. 73, and its supplements, the certificate of incorporation of Perry Council No. 57, Order of United American Mechanics, a corporation of the first class. The charter was approved, with the order and decree required by the statute, and duly recorded. The fees due the prothonotary for filing and the recorder for recording the charter were paid. The corporation, by its solicitor, requested of the prothonotary delivery to it of the charter or articles of incorporation, which was refused. Upon petition of the corporation, setting forth the foregoing facts, a rule was granted on the prothonotary to show cause why the said articles should not be delivered to the petitioner. No answer has been filed to the rule, but the respondent was represented at the argument by counsel, who insists that the articles of incorporation must remain on file in the prothonotary's office as an essential part of the record of the proceedings.

It has been the theory of the statutes relating to the organization of corporations in Pennsylvania, from the Act of April 6, 1791, 3 Sm. Laws, 20, down to and including the Act of 1874 and its supplements, that incorporation is the act of the incorporators, requiring only the approval of the agencies of the State's sovereign power. The Act of July 18, 1863, P. L. (1864) 1102, authorizing the incorporation of "corporations for mechanical, manufacturing, mining and quarrying purposes," did not even require the approval or the recording of the "articles of agreement" by which corporations under it were constituted. Section 1 of the Act of 1874 provides: "That corporations may be formed under the provisions of this act by the voluntary association of five or more persons." Section 3 provides that "the charter *(i. e.,* the 'certificate' of the 'voluntary association') of an intended corporation must be subscribed by five or more persons," and "the said certificates of incorporation *(i. e.,* 'the charter') of the first class shall be acknowledged by at least three of those who subscribe to them before the recorder of deeds to be their act and deed." The only further requirements are that the charter be presented to a law judge of the proper county for his approval and that it be recorded. The charter is, therefore, in the beginning, the written contract of the incorporators, and after it has passed the requirements of the statute and received the endorsement of judicial approval and the certificate of the recorder, it becomes the law of the corporation and the foundation of its title to the corporate powers conferred by the act. Clearly it is the property first of the incorporators and finally of the corporation, and, after it has been recorded,

1 D. & C.

should be delivered to its owner. "Like all other recorded instruments, such as deeds, mortgages, etc., after the recording of the charter and the certificate of the recorder of deeds being noted, . . . the engrossed charter would be delivered to the solicitor of the applicants for the charter, who would deliver the same to the qualified officer or officers of the then corporation:" In re Berezdiver Woliner Beneficial Ass'n, 27 Dist. R. 645.

The statute does not require that possession of the charter be surrendered to the prothonotary, nor even that it shall be temporarily filed in the prothonotary's office. In St. John's Beneficial Union, 20 Dist. R. 503, the court says: "The first (objection) is that the charter was not filed in the office of the prothonotary. The law does not require that it should have been so filed, and we would not be justified in refusing to grant the charter on that account."

"The privilege of incorporation and the requirements to obtain it are wholly statutory. The courts are not entitled to grant or refuse the right except upon legal grounds, and the requirements fixed by law can neither be dispensed with nor added to:" Deutsch-Amerikanischer Volksfest-Verein, 200 Pa. 143, 145. See, also, Garrett-Williamson Lodge, 239 Pa. 474.

Neither the prothonotary nor his office is referred to in the statute. The ground upon which he is given merely temporary custody of the charter is supplied by judicial interpretation. While notice of the intention to apply for a charter is required to be published, "setting forth briefly the character and object of the corporation to be formed," the Act of 1874, in its crudity, fails to provide that the articles of incorporation shall be kept at a convenient place for examination by those whose interest may have been aroused by the advertisement. Perhaps the earliest reported case in which this deficiency is noted is that of Charter of the Church of the Holy Communion, 8 W. N. C. 357, in which the court says: "We think notice means publicity, and that the proposed charter of an intended corporation ought to be lodged in the prothonotary's office, subject to inspection by the public. Ordered, that the matter stand over for one week to allow exceptants an opportunity to examine the charter." Later, in Charter for Saint Luke's Methodist Episcopal Church, 17 Phila. 261, 264, it is said: "The charter should be filed in the office of the prothonotary and remain there for inspection during the whole time the publication is being made." The same requirement was made in In re Regina Elina, 14 Dist. R. 476; St. John's Beneficial Union, 20 Dist. R. 503, and other cases. The necessity for affording opportunity to inspect the charter during the period of advertisement, and the advantages of the prothonotary's office as the place for such inspection, although obvious, seem to have been suggested by the Act of Oct. 13, 1840, § 13, P. L. 5, upon which the Act of 1874 was evidently modeled. This section, after requiring that the articles of association be presented to the Court of Common Pleas for examination and approval, provides that "said court shall direct said writing to be filed in the office of the prothonotary of said court;" but section 15 of the same act also directs that "after said articles of association shall be recorded as before directed, the same shall be duly certified to be recorded and delivered over to the applicants."

The purpose of the practice of filing the charter in the office of the prothonotary is clear; and it is equally clear that, after that purpose has been served, the charter should be delivered to its owner, the corporation. There is no legal warrant for requiring the corporation to surrender its property for purposes of record. Until the legislature makes provision for them, record requirements may be met in the manner suggested in Union African

244 DISTRICT AND COUNTY REPORTS.

M. E. Church, 1 Ches. Co. Reps. 459, or in Berezdiver Woliner Beneficial Ass'n, 27 Dist. R. 645.

Attention has been called by counsel for respondent to the case of Philadelphia Relief Ass'n, 7 W. N. C. 146, in which a motion for leave to withdraw an application for charter, which had been disapproved, was refused. It does not appear from the report of the case that the words "application for charter" mean the charter itself, or that the charter was included in the ruling. If it was, no reason is given to justify its being thus permanently impounded, except that "this application is practically for leave to withdraw a record of the court." The statute does not make the charter a part of the record of the court, nor does the practice under the statute, and there is not apparent any right in the court to deny the corporation possession of its own property after the purposes of its temporary custody by the prothonotary and recorder successively have been attained.

And now, Aug. 3, 1921, rule absolute, and the prothonotary is directed to deliver the charter, with the endorsed approval and order, and the recorder's certificate, to the solicitor of the petitioning corporation, by him to be delivered to the proper officer or officers of the said corporation.

From Charles H. Smiley, New Bloomfield, Pa.