## In re North Penn Volunteer Fire Department.

*William F. Dannehower, Sr.,* for applicants.
*High, Dettra & Swartz,* contra.

KNIGHT, J., Dec. 6, 1929.—This is an application of a volunteer fire company for a charter.

A protest was filed and the matter was referred to a master, who has reported in favor of granting a charter to the applicants.

The protestants have filed exceptions to practically all of the master's findings of fact and conclusions of law; argument has been had on these exceptions and the case is now before us for decision.

The Legislature has delegated to the courts the power to grant charters to corporations of the first class, and the Act of April 29, 1874, P. L. 73, and its

supplements, prescribes the method of incorporating these associations and defines the duties of the court in relation thereto.

By its terms we are required "to peruse and examine said instrument, and if the same shall be found to be in the proper form, and within the purposes named in the first class specified in the foregoing section, and shall appear lawful and not injurious to the community, he shall endorse thereon these facts, and shall order and decree thereon that the charter is approved."

Passing for a moment the form of the present application, let us consider the purpose for which the corporation is sought to be formed. This purpose, as declared in the application, is the support and operation of fire engines and other equipment for the control of fires. This is not only a laudable purpose, sanctioned by long usage and frequent example, but is one of the purposes particularly mentioned in the Act of April 29, 1874, *supra*.

The purpose of the intended corporation is proper and lawful and a purpose which is beneficial and not injurious to the community.

Beyond this the applicants say we cannot go, but in this we fail to agree with them.

The Act of 1874, *supra*, establishes two tests for a proposed corporation of the first class. First, its purpose must fall within the purposes defined by the act; and, secondly, it must appear lawful and not injurious to the community.

By this latter requirement the Legislature certainly intended that the courts could and should inquire into the nature of the proposed corporation and the means intended to be used in accomplishing its purpose.

The purpose might be proper, but the manner of accomplishing the purpose might be unlawful or injurious to the community. We intend, therefore, to enter into the merits of this controversy, which will require a brief statement of the facts.

North Wales is unique among the boroughs of Montgomery County in one respect—for many years it has maintained a municipal fire department. The borough owns all the apparatus, pays the fire chief a small annual salary and pays the firemen selected by him an hourly compensation while actually engaged in fighting fires.

About two years ago a dispute arose between the then fire chief and the borough council over the purchase of a new piece of apparatus. This dispute culminated in the resignation of the chief and many of his men from the municipal fire department. Shortly thereafter the movement for the new fire company had its inception. While there is little doubt that the idea of a volunteer fire company had its birth in the pique, resentment and disappointment of the resigning firemen, the movement soon attracted to its support many substantial citizens of the Borough of North Wales and the surrounding townships, who have not the slightest interest in the dispute between the borough and the members of its fire department.

Petitions have been filed in support of the present application numerously signed by substantial citizens of North Wales Borough and of Lower and Upper Gwynedd and Montgomery townships.

The protestants base their objections to the grant of a new charter principally on two grounds. First, there is no necessity for a second fire company in North Wales. Second, an additional fire company, especially under present conditions, will be injurious to the community.

There may be merit in the first objection, but we cannot refuse this charter because of lack of necessity: Deutsch-Amerikanischer Volksfest-Verein, 200 Pa. 143.

On the question of necessity, however, it may be pertinent to note that over 400 citizens of North Wales and surrounding territory, by signing the petitions favoring the new company, have indicated their opinion as to its necessity. It must also be borne in mind that the present North Wales Fire Company is owned and controlled by the municipality, which, with entire propriety, could confine the activities of its fire department to the borough. Such a step would leave the many valuable properties adjacent to the borough without fire protection save that afforded by the distant companies located at Lansdale and Ambler.

Will an additional fire company be injurious to the community of North Wales?

The protestants say it will for several reasons. First, they argue that it will impose an additional financial burden on the people. The new company must be supported by voluntary contributions of the public. Whatever financial burden it puts upon the citizen is a self-imposed burden. If the proposed company does not fill a need or accomplish anything for the community, the people can put a speedy end to it by withholding financial support.

It is also alleged that the record shows that the proposed fire company cannot finance its program. We are of the opinion that we cannot refuse this charter for such a reason, and we hazard the statement that three-fourths of the fire companies of Montgomery County were started in the same manner as this proposed company, so far as their financial structure is concerned.

In considering this application, we cannot weigh the chances of ultimate success or failure of the venture.

Next, the protestants contend, and this is their strongest objection, that the incorporation of the new company will be injurious to the community because the rival firemen will fight each other and not the fires.

This fear has been expressed by several well-known and prominent citizens of North Wales who were called as witnesses by the protestants.

The master in his third and fourth conclusions of law adequately disposes of this objection when he holds that it is a legal presumption that the proposed corporation will be lawfully conducted, and the bare possibility of friction and rivalry with the North Wales Fire Department is not good ground to refuse incorporation of the new company.

As a matter of fact, we believe that the protestants are unduly apprehensive of trouble between the two fire companies.

The old days when a fire always ended in a fight are gone, and we see in Pottstown, Norristown, Jenkintown and several of our first class townships rival fire companies in close proximity coöperating in harmony against the common enemy, fire.

The protestants have offered to withdraw their objections to the petition if the applicants will agree to locate the fire company outside the borough. So far as their objections are concerned, it appears to us to make little difference which side of the borough line the fire house is located. If the borough officials can control a fire company located just outside the borough in fighting borough fires, they can equally control one situated in the borough.

The borough authorities are in command of the water supply.

The protestants object to the form of the application on the ground that the location of the proposed corporation is not set forth with sufficient particularity. The applicants now seek to amend their application so that paragraph three shall read: "The business of said corporation shall be transacted in the Borough of North Wales, Montgomery County, Pennsylvania."

We have allowed the amendment and are now of the opinion that the location of the corporation is set forth with sufficient particularity.

The protestants except to the form and relevancy of many of the master's findings of fact. A number of these objections are well taken, but it would serve no useful purpose in a case like this to send the report back to the master for correction in matters of form, nor do we deem it necessary to make particular findings of fact ourselves.

After going over the whole record and reading the briefs of counsel, we are of the opinion that the exceptions to the master's report must be dismissed, the report confirmed and the application for a charter granted.

And now, Dec. 6, 1929, the exceptions filed to the master's report are hereby overruled and the report confirmed, and the within certificate of incorporation having been on file in the office of the prothonotary of this court since July 24, 1928, and it appearing that publication of the intended application was made in the Norristown Times Herald and the Montgomery County Law Reporter as required by law, and due proof of said publication having been presented to the court, and the court having perused and examined the said application for charter and finding the same, as amended, to be in proper form and within the purposes named in the first class of corporations specified in section 2 of the Corporation Act of April 29, 1874, and supplements, and that said purposes are lawful and not injurious to the community, it is ordered and decreed that said charter be approved, and upon the recording of said charter and its endorsement and of this order in the office of the recorder of deeds in and for the County of Montgomery, which is now hereby ordered, the petitioners thereto, their associates and successors, shall henceforth be a corporation for the purposes and upon the terms and under the name therein stated.