## In re American League of Theatrical Arts, etc.

*Edward Davis,* for petitioner.
*Samuel Kohn,* for protestants.

ALESSANDRONI, J., November 17, 1943.—This application is for a charter for a nonprofit corporation. The matter was referred to a master appointed by this court for the purpose of taking testimony on the application and submitting his report thereon. The report has been filed and we have considered it and the recommendation therein set forth. Because of a number of disturbing elements apparent therein which have given us pause in acting on that recommendation, we are resubmitting the matter to the master.

In our consideration we have been cognizant of two elements. Firstly, that by definition "any corporation whatsoever organized for any purpose or purposes involving pecuniary profit to its members or shareholders" (Nonprofit Corporation Law of May 5, 1933, P. L. 289, art. I, sec. 4, as amended, 15 PS §2851-4) is to be excluded from the province of nonprofit corporations. Secondly, implicit, although not articulated in our Nonprofit Corporation Law, is a sense of public interest and public benefit; that the privileges and immunities to be vested by the grant of such a charter should not be lightly conferred without some quo pro for the community. It is not sufficient that there be a compliance with the statutory requirements. There should affirmatively appear a reason or function of general interest which will be served by a grant of the application: Rox Athletic Association's Charter Appli-

cation, 318 Pa. 258 (1935). It is in such a sense that we regard our statutory obligation of determining whether the purposes of the proposed corporation are "lawful and not injurious to the community": Nonprofit Corporation Law of May 5, 1933, supra, art. II, sec. 207.

With such elements in mind, several phases of the record in its present state require further inquiry.

In the declaration of purpose as set forth in the application, we find much which is general and vague in character. The testimony of the applicants disclosed that the proposed corporation is to exist for a far more restricted and limited function than is there set forth. If it be so, then the articles should be amended to indicate that the function of the proposed corporation is actually to develop an interest among prospective entertainers in the entertainment field and to develop new talent. Loose and grandiose expressions of "to maintain a club for the social enjoyment of its members and to promote sociability among them . . . to interest and associate the members and residents of the City of Philadelphia in the theatrical professions . . . in the theatrical arts," and the like, but becloud the manifested real purpose of the corporation.

Persons who are recognized as leaders in the field of the arts in this community have been designated as among the proposed officers of the corporation. Yet, these persons did not appear at the several hearings before the master and no adequate explanation for such failure is given. In view of the suggestion of impropriety to which we shall refer hereafter, we believe it was the duty of the master to make full inquiry of all of the persons named as the proposed officers and to cause their appearance before him for that purpose.

At the hearings before the master, certain protestants appeared to attack the credibility of Richard C. Mayo, described as executive secretary and general director of the proposed corporation. The focal point

of the attack involved two "benefit shows and dances" held in the years 1941 and 1942. The first, conducted by a committee headed by Mr. Mayo, under the name of "Actors' Welfare and Relief Association," produced a fund of $800. The second, also conducted by a committee headed by Mr. Mayo but using the name of the presently proposed corporation, netted the sum of $1800. Both funds were and are substantially administered and controlled by Mr. Mayo alone. As to the first fund, he testified that the proceeds had been expended for welfare and relief work among needy actors and for the purchase of 18 graves, five of which have since been used. As to the second fund, it is proposed that this be transferred to the new corporation to conduct its affairs. Insofar as the proposed corporation does not articulate any intention of performing charitable work, we are at once confronted by the suggestion that the fund was obtained under public representations not altogether consonant with the facts. Secondly, the testimony disclosed that the fund now on hand is in excess of $1800, whereas the application discloses an intention to commence corporate functions with a fund of $500 (article 8). Was the testimony that all of the fund now on hand will be transferred to the new corporation, and not only $500 thereof, inspired by the appearance of the protestants? We think the master should delve further into this subject.

The applicants resisted a demand from the protestants that they—particularly Mr. Mayo—produce the records of receipts and disbursements from the two "benefits." The master rejected the demand on the ground that there was no proof that the records contained evidence material to the protestants' case. In this we think the master erred. Upon the suggestion of impropriety, particularly when the suggestion was directed to the activity of a previous association bearing the same name as the proposed corporation, the master should have completely exhausted that accusa-

tion. The statutory mandate that nonprofit corporations exist for a purpose "not injurious to the community" does not stop with a measurement of the words of the purpose clause. The master should have searched out the truth of the suggestion that the persons now seeking the charter previously conducted themselves with impropriety. If the protestants abandon that inquiry, the function of the master, fully performed, calls for his inquiry into it for he is the aid and instrument of the court in determining the propriety of the application.

In Philadelphia Labor's Non-Partisan League Club's Application for Incorporation, 328 Pa. 465, 469 (1938), the court said:

"The duty of the court is somewhat different in passing upon charter applications laid before it from what it is in some other matters, because it is required by the law to certify that the purpose or purposes given in the articles are lawful and not injurious to the community. The applicants must satisfy the court as to the propriety of its certificate, 'otherwise', in the language of the act 'the court shall refuse the application.' It should always be borne in mind that in charter applications the applicants are asking the court for a special privilege as to the propriety of granting which, its conscience must be satisfied. In *Deutsch-Amerikanischer Volksfest-Verein*, 200 Pa. 143, 145, 49 A. 949, we said: 'The court undoubtedly may and should look into the nature of the proposed social enjoyment, to see that it is "lawful and not injurious to the community." ' "

We think that further inquiry should be had in this matter.

And now, to wit, November 17, 1943, the matter is referred back to W. F. Leopold, Jr., the master heretofore appointed, for further inquiry in accordance with this opinion and to make his report thereon to the court.