## Sharon Boxing Club's Incorporation

*Martin E. Cusick*, for applicant.

*B. H. Marks* and *Joseph H. Broscoe*, for protestant.

ROWLEY, P. J., July 21, 1947.—This matter is before the court upon the application of Sharon Boxing Club for incorporation.

The declared purpose of the proposed corporation is:

"The association together of residents of the Shenango Valley for the purpose of promoting amateur boxing contests, tournaments, athletic games and con-

tests, physical education and development of young men; the establishment of a gymnasium and club house where the members may gather for athletic activities, physical development and social intercourse, Provided no intoxicating liquors or beverages shall be sold or consumed on the Club premises."

Two residents of the City of Farrell, Roy DeBrakeleer and Herman Frank, filed objections to the application.

Subsequently, this protest was assumed and pursued to hearing by Farrell Boosters Club, a nonprofit corporation, the declared purpose of which organization is:

"The maintenance of a club for social purposes; the promoting, directing and holding of athletic sports, games and contests of various kinds, the promotion of civic pride, and the encouragement of education; the promoting, directing and holding and participation in public meetings, parades, exhibitions and other civic observances, and the rendering of aid and assistance in cases of distress or calamity."

Membership in Farrell Boosters Club is limited to 36 in number. Only residents of the City of Farrell or those engaged in business therein are eligible for membership.

All incorporators of Sharon Boxing Club are residents of the City of Sharon.

It was shown at the hearing that Michael Palumbo, organizer of Sharon Boxing Club, incidental to his regular employment as a factory worker, had promoted amateur boxing contests for profit. Recently, Palumbo was informed by the Amateur Athletic Union that a sanction for such contests could be granted only to a nonprofit corporation. Thereafter, Palumbo and associates presented the instant application.

Protestant argues that the circumstances warrant an inference that applicant is not to be a nonprofit organization. Undoubtedly, there is opportunity to

prostitute a nonprofit corporation for the profit of its members. However, the court is not warranted in assuming such misuser. For such abuse the law affords a remedy.

The principal objection urged by protestant is that Sharon Boxing Club and Farrell Boosters Club will contest for the limited public patronage of boxing contests, with the result that neither can survive. Thus, protestant says, the community will be injured (by lack of such contests).

The Act of April 29, 1874, P. L. 73, governed the formation of corporations until 1933. But section 201 of the Act of May 5, 1933, changed the existing law, as set forth in the earlier act.

Under the Act of 1874 corporations of the first class (nonprofit corporations), could be formed for any one of 15 specified purposes. That act hampered the creation of some useful corporations, because the purpose could not be brought within the enumerations of the act. Also, the courts ruled that the purpose had to be a single one, and an application could not be granted unless the proposed corporation was within one of the descriptions set out in the act. Furthermore, some judges insisted upon proof of necessity or similar requirements for which there was no legislative authority: Deutsch - Amerikanischer Volksfest - Verein, 200 Pa. 143.

But even under the Act of 1874 the principal enquiry for the court was whether the purposes were lawful and not injurious to the community.

Quite logically, the legislature and the appellate courts assumed that the hearing judge would be best qualified to determine what promised injury to the community. There was no appeal from the determination of the judge: Appeal of Vaux, 109 Pa. 497, 1885. However, an abuse of discretion only was reviewed upon certiorari: Elkland Leather Workers' Association, 330 Pa. 78.

"The privilege of incorporation, and the requirements to obtain it, are wholly statutory. The courts are not entitled to grant or refuse the right except upon legal grounds, and the requirements fixed by law can neither be dispensed with, nor added to": Deutsch-Amerikanischer Volksfest-Verein, supra, p. 145.

The court has the clear obligation to scrutinize all applications. The wholesome profession of the application does not relieve the judge of the duty to look beyond the bare averments of the application and determine whether there is any probability that the proposed corporation will contribute to drunkenness, gambling, idleness or in any manner prejudice the morals, health or safety of the citizens.

We were not a little impressed by the testimony as to the moral character of the incorporators. Some of it did not qualify as reputation evidence as it was based upon the personal knowledge of the witness, not upon the "speech of the community." Two witnesses were directors of Sharon Public Schools, two were newspapermen, and two were merchants. Curiously enough, such testimony based upon the personal experiences of the witnesses with the incorporators, and the witnesses' personal observations, was more helpful than testimony as to general reputation. This is especially true of the testimony of the "character" witnesses who did not favor programs for boxing contests in both Farrell and Sharon.

The character of the incorporators is always a highly important element.

We are aware that clubs all too frequently abandon the declared purpose when a charter has been obtained. However, there are some quite promising aspects of the proposed activities. Amplifying the declared purposes, the incorporators testified that they sought to increase the opportunities of underprivileged youths to participate in athletics. Each of the incorporators has had more than average proficiency or experience in boxing,

basketball, baseball, or handball. When one of the incorporators was asked, upon cross examination, to explain his interest in the proposed activities, he answered that as a boy the only baseball he had was one of his own making.

It is argued that existing organizations offer the opportunities which the incorporators say they will seek to supply. Whatever be the reason, it is well known that countless youths within the area do not now enjoy the activities suggested.

If the proposed corporation should devote itself earnestly and wholeheartedly to the professions which the incorporators now make, it will have earned the sincere gratitude of the community. Whether such a goal will be attained must depend upon the good faith and unselfishness of the members of the corporation.

Many citizens associate boxing with dishonesty, intoxication, gambling and disorderly conduct. These immoralities are not necessarily attributes of boxing contests; nevertheless, it is vital that the supervision be actively alert to insure their exclusion.

The Farrell Boosters Club has been accustomed to promote boxing contests in the stadium of the Farrell High School. The proceeds have been applied to some worthy purposes. Certain equipment and facilities have been purchased for the schools. Contributions have been made to the Cancer Society and to other local or Nation-wide charitable funds. No one will minimize the desirability of such contributions; however, the court is utterly without power to declare that boxing contests may not be conducted in the high school stadium in the City of Sharon, as applicant proposes, even if such would detract from the patronage of the contests held by the Boosters Club in the City of Farrell. And this is so, however worthy the purposes to which the proceeds of the latter contests are applied.

By section 201 of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, the legislature has declared:

"Five or more natural persons of full age and of either sex, married or single, at least three of whom are residents of the Commonwealth and citizens of the United States . . ., may form a nonprofit corporation under the provisions of this Act for any purpose or purposes which are lawful and not injurious to the community."

The duty of the court in passing upon a charter application is to certify that the purpose or purposes given in the articles are lawful and not injurious to the community: Phila. Labor's N. P. L. Application, 328 Pa. 465. Notwithstanding the declaration of lawful purposes in the application, the court may find that the real purpose is harmful: Rox Athletic Assn.'s Charter Application, 318 Pa. 258.

The broad privileges extended to the citizens by the Nonprofit Corporation Law cannot be abridged by the court. The duty of the court is to determine whether a particular application is within the statute, not whether the enactment was wise legislation.

The all important requirement is that the stated purpose of incorporation shall be one that is lawful and not injurious to the community.

"The only limitations that this act [1933] places upon domestic nonprofit corporations are that such corporations shall be formed for a purpose or purposes which are lawful and not injurious to the community, . . .": Pennsylvania Corporation Laws (1933), Shockley and Schnader, p. 178, comment 5.

If the object is lawful, it cannot be assumed that the corporation will be given to unlawful purposes, and the court cannot reject as not being a proper purpose one authorized by statute.

The instant application presents two questions:

(1) Are the articles of incorporation in proper form and within the provisions of the Nonprofit Corporation Law of May 5, 1933, P. L. 289?

(2) Are the purposes of the proposed corporation lawful and not injurious to the community?

Both questions must be answered in the affirmative. See *Elkland Leather Workers' Association*, 330 Pa. 78.

In *Monessen Volunteer Fire Department Charter*, 356 Pa. 465, the lower court had granted the charter over the protest of an existing organization bearing a similar name and long engaged in the same activity. The Supreme Court affirmed the order.

For the reasons hereinbefore set forth, we have this date entered a decree of incorporation upon the instant application, with the limitation that no intoxicants be sold or dispensed by the corporation or upon the premises of the corporation.