## Citizens League of Wheatfield Township

*A. M. Wolf*, for applicants.

*C. W. Kugler*, contra.

RICE, P. J., August 19, 1948.—This is a proceeding for the incorporation of Citizens League of Wheatfield Township as a nonprofit corporation under the provisions of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, and its amendments (15 PS §49A). Objections to the granting of the charter were filed by divers citizens of Wheatfield Township, a hearing in court was held, testimony was produced by the incorporators and the objectors, and their counsel have filed briefs.

The duty and authority of the court are set forth in section 207 of the said law, as amended by the Act of June 20, 1947, P. L. 642, which provides, inter alia, as follows:

"The court shall consider the application. It may hear evidence, if any there be, on behalf of the applicants and against the application, . . . If the court shall find the articles to be in proper form and within the provisions of this act, and the purpose or purposes given in the articles to be lawful and not injurious to the community, . . . the court shall so certify on the articles, and shall order and decree thereon that the articles are approved and that . . . the corporation shall come into existence for the purpose or purposes

and upon the terms stated therein; otherwise, the court shall refuse the application for a charter."

In Deutsch-Amer. Volksfest-Verein, 200 Pa. 143, 145, the Supreme Court said:

"The privilege of incorporation, and the requirements to obtain it, are wholly statutory. The courts are not entitled to grant or refuse the right except upon legal grounds, and the requirements fixed by law can neither be dispensed with, nor added to." See, also: Charter of Jehovah's Witnesses, 55 York 186; Wynnefield Jewish Centre, 50 D. & C. 257; Nat. Foundation of Dramatic Arts, 62 D. & C. 343; Sharon Boxing Club, 62 D. & C. 136. Hence, it becomes necessary to examine and study very carefully the articles of association, the registration certificate, the proofs of advertisement, and any other pertinent papers to determine whether all of the statutory requirements are met.

Section 201 of the said law requires that all of the incorporators shall be of full age. The best practice is to have such an averment of the full age of the incorporators in the first or introductory paragraph of the articles, but the act does not seem to require an averment. If there is no averment of the age of the incorporators, there must be proof of the fact. In this case the testimony shows that the incorporators are all of full age, and the court accepts that as complying with the law.

Section 203 (3) of the said law requires "a precise and accurate statement of the purpose or purposes for which it (the proposed corporation) is to be formed". According to Webster's New International Dictionary, "precise" means: "having determinate limitations; exactly or sharply defined; definite; exact, not vague or equivocal; distinct"; and "accurate" means: "in exact and careful conformity to truth or to some standard of requirements; free from failure, error or defect; exact". In Webster's Dictionary of Synonyms, it is said: "Accurate implies, more positively, fidelity to fact or

truth attained by the exercise of care; Precise stresses rather sharpness of definition or delimitation, or scrupulous exactness." At any rate, the purposes must be stated with particularity, exactness and clarity; general and vague expressions of purpose are not to be approved.

When the Supreme Court had power to grant charters, it said, in Nat. Literary Assn., 30 Pa. 150, 151:

"1. If we grant a charter to an association 'for the cultivation of friendly feelings', and 'for an accumulation of works', and these vague terms are left to be interpreted according to the principles of any associates who may choose to use them, they may include free-love societies, and the works spoken of may be works of art such as are forbidden by law and good morals. We do not know whether this society is a library, or art union, or musical, or debating, or theatrical, or dancing society. 2. It is essential that the associates shall each be able to learn from the charter the purposes of the corporation, in order that he may know his rights in the corporation, and the extent to which his interests are involved in it; and without this he can have no power to hold the association to the objects which he had in view in becoming a member."

In United Sportswear Workers' Union, 29 D. & C. 622, 624, Judge Hicks said:

"The application states the purpose: 'To promote the civic, educational, social, and economic advancement of its members, by meeting and discussing ways and means to further the same . . .'; this is a vague statement, certainly very general, and is not precise or accurate. Just what is intended one cannot exactly know. The incorporators and associates propose to meet and discuss ways and means to further the civic, educational, social, and economic advancement of the members. What is this advancement, characterized as civic, educational, social, and economic, and what ways and means are within contemplation? It may or may

not be inimical to the general good of society or our form of government."

In American League of Theatrical Arts, etc., 48 D. & C. 700, 702, Judge Alessandroni said:

"In the declaration of purpose as set forth in the application, we find much which is general and vague in character. . . . Loose and grandiose expressions of 'to maintain a club for the social enjoyment of its members and to promote sociability among them . . . to interest and associate the members and residents of the City of Philadelphia in the theatrical professions . . . in the theatrical arts', and the like, but becloud the manifested real purpose of the corporation."

These articles of association state: "The corporation is formed for the purpose of fraternal and educational objects; to preserve and strengthen comradeship among its members; to foster true patriotism; to endeavor to solve the problems of the community to the best interest of all concerned; to be strictly non-partisan in political affairs, non-profitable and non-sectarian." When men are associated together to achieve a common purpose, whether the purpose be to worship God or to steal, they are brothers and comrades in religion or crime, and to bind them closer in the ties of fraternity and comradeship is not necessarily a desirable end, but it all depends on the real aim of the association. Strengthening such ties may be an incidental result of the association, but it should not be the purpose for which they may be incorporated. In Dickens' Oliver Twist, Fagin trained boys and girls to pick pockets, and, in the strictest sense of the word, he educated them as thieves. Thus, we see that the terms "fraternal objects", "educational objects" and "comradeship" reveal nothing as to the real purposes of the incorporators but may be only a cloak to conceal a large number of activities intended to be engaged in. The language respecting community problems is also very general and vague. A community may have many problems which ought to be solved, such

as ignorance, health, sanitation, highways, housing, local government, lawlessness, juvenile delinquency and numerous others. If the problem be ignorance of the people, the solution may lie in better school facilities, public libraries, lectures, literary, debating and musical programs, and so on. If then a corporation is to be formed for the purpose of educating the people, the specific methods should be set forth. There can be no doubt that a nonprofit corporation to establish and maintain a free public library for the people of a particular town or township would be very beneficial and lawful and noninjurious. But, in any event, a court should not give a proposed corporation carte blanche to deal with all community problems in whatever way it chooses. To do that would be to grant a corporation the power to be meddlesome and dictatorial to an extent that it would be harmful. To prevent any such result the purposes must be specifically and clearly stated, so that the court may judge whether they are lawful and noninjurious. To say that the corporation is to be nonpartisan, nonprofitable and nonsectarian does not state a purpose within the meaning of the law. May a corporation be formed for the purpose of being nonpartisan or nonprofitable or nonsectarian? It is very apparent that it may not. We conclude that the statement of purposes does not comply with section 203 (3).

Section 203 (6) of the said law requires the articles to set forth "the names and addresses of three or more persons who are to act as directors until the election of their successors". This provision is not complied with. In the sixth paragraph of the articles, three persons are named as chairman, vice chairman and secretary-treasurer. The articles properly call them officers, but they are not directors and have none of the powers given directors.

Section 203 (8) of the said law requires the articles to set forth "the amount of assets, classified as to real and personal property, which the corporation will have to start its corporate functions". In the eighth para-

graph of the articles, it is said: "The corporation will have to start its corporate functions the sum of One Hundred Dollars ($100.00)." But these assets are not classified as to real and personal property. One might think that it should be assumed that this sum is money, but the court is not to assume anything when a specific averment is essential.

Section 205 of the said law requires the articles, together with the registration certificate, to be filed in the office of the prothonotary at least three days prior to the day when the application is to be presented to the court. In this case the articles were filed April 14, 1948, but the registration certificate was not filed in, or presented to, the court until May 10, 1948, when the application was presented. Thus, the statutory requirement was not complied with, and such failure is good cause for refusing the application: Shenandoah Heights Republican Club, 7 Schuyl. Reg. 279.

Section 217 of the said law provides:

"In the case of the incorporation of an unincorporated association, society, league or club as a nonprofit corporation, the articles of incorporation, when presented to the court, shall, in addition to the other papers heretofore required in this article, have attached thereto a copy of the constitution and by-laws of the association and an affidavit of at least three of the incorporators, stating: (1) That the purpose or purposes set forth in the articles are the same as those of the unincorporated association. (2) That the incorporators constitute a majority of the members of a committee authorized to incorporate such association, . . ."

The evidence plainly shows that a group of citizens of Wheatfield Township met in November 1947 and organized a club or league and gave it the name, Citizens League of Wheatfield Township, that the league adopted bylaws, held monthly meetings, rented a hall for the meetings and paid rent, and transacted busi-

ness, and that, at the time of the hearing, the league had 107 members. At one of the meetings the league took action to procure a charter as a nonprofit corporation. The incorporators are members of the league. Thus, there was in existence, at the time of the filing of the articles, an unincorporated association, society, league or club, and the intended corporation is being formed for the express purpose of incorporating such league. But no affidavit such as is required in section 217 was attached to the articles when they were presented to the court. Attached to the articles are bylaws of Citizens League of Wheatfield Township, but nothing is said to show whether they are the bylaws of the unincorporated league or are bylaws for the proposed corporation adopted in advance. However that may be, since section 217 has not been complied with, the application must be refused: William J. Betz, Jr., Voters League, 21 D. & C. 357; Debs Memorial Society, 30 D. & C. 685; American United Russian League, 36 D. & C. 699.

For these reasons we cannot find and certify "the articles to be in proper form and within the provisions of this act", to wit, the Nonprofit Corporation Law.

Even if we did so find and certify, it would be necessary for the court to find that the purposes given in the articles are lawful and not injurious to the community before a charter could be granted. In Phila. Labor's N. P. L. Club's Application for Incorporation, 328 Pa. 465, 469, the Supreme Court said:

"The duty of the court is somewhat different in passing upon charter applications laid before it from what it is in some other matters, because it is required by the law to certify that the purpose or purposes given in the articles are lawful and not injurious to the community. The applicants must satisfy the court as to the propriety of its certificate, 'otherwise', in the language of the act, 'the court shall refuse the application'. It should always be borne in mind that in charter

applications the applicants are asking the court for a special privilege as to the propriety of granting which its conscience must be satisfied. In Deutsch-Amerikanischer Volksfest-Verein, 200 Pa. 143, 145, . . . we said: 'The court undoubtedly may and should look into the nature of the proposed social enjoyment, to see that it is "lawful and not injurious to the community" '."

There have been numerous instances of the exercise of this power to "look into the nature" of the objects and purposes of an intended corporation. It means more than an interpretation of the language used in the articles to state the purposes. The purposes declared in the articles may be very innocent and idealistic and may lead one to think that the proposed corporation will contribute to the coming of the millennium, but, on the other hand, they may cloak and conceal the real design of the incorporators, which may be an evil one and be injurious to society. If it were not for this power of the court a gang of criminals might be incorporated although their articles of association contained purposes that would greatly benefit the community if accomplished. In Phila. Labor's N. P. L. Club's Application, supra, the lower court refused to grant a charter because it had obtained information through the police that some of the incorporators were disreputable persons, from which information it concluded that the corporation would be injurious to the community, and the Supreme Court reversed the lower court on account of the method of obtaining the information and not because the disreputable character of some of the incorporators, if properly proved, was not a good reason for the refusal of a charter. In Most Worshipful Widows' Sons Grand Lodge of Ancient Free and Accepted Masons of Penna. Incorporation Case, 160 Pa. Superior Ct. 595, the Superior Court said (p. 596) : "The nub of the controversy is in regard to the use of the words 'Free and Accepted Masons'," and proceeded to discuss some facts in Masonic history,

found that the incorporators were not colored Masons, and concluded that the purposes of the proposed corporation were not lawful and were injurious to the community. The Superior Court does not, in its opinion, explain just how the proposed corporation could have injured the people of the community. The controversy was between two groups of colored people and did not concern white persons, and only a few of the members of the proposed corporation may have lived in the "community". But the case does reveal the broad inquisitorial power of the court and the court's large discretion to determine what may or may not be injurious to the community. In Sharon Boxing Club, 62 D. & C. 136, 139, Judge Rowley said:

"The court has a clear obligation to scrutinize all applications. The wholesome profession of the application does not relieve the judge of the duty to look beyond the bare averments of the application and determine whether there is any probability that the proposed corporation will contribute to drunkenness, gambling, idleness, or in any manner prejudice the morals, health or safety of the citizens. . . . The character of the incorporators is always a highly important element."

Other cases where the courts made inquiry into the real purposes of the incorporators, beyond their purposes set forth in the articles, are: Scranton Sportsmen's Welfare Assn., 57 D. & C. 91; Am. League of Theatrical Arts, 48 D. & C. 700; Am. Christian League, 31 Del. Co. 175; Am. United Russian League, 36 D. & C. 699; Penna. Retirement Life Payments Assn., 34 Luz. L. R. 329; Jehovah's Witnesses, 55 York 186. All these cases assert the duties and authority of the court under section 207 of the Nonprofit Corporation Law.

Now, in the exercise of this power and in the discharge of this duty, the court has carefully considered the testimony and finds certain facts and circumstances that may be called the background of the proposed

corporation, which disclose motives and intentions on the part of the incorporators and their associates and aid the court to determine whether there is a probability that the corporation may injure the community.

Walter D. Byers, being one of the public school teachers in Wheatfield Township, administered corporal punishment to David Jenkins, one of his first-grade pupils, on October 21, 1947. This incident aroused great ill feeling against him and caused a demand for his dismissal as a teacher because a considerable number of citizens believed the punishment of the child to have been excessive and cruel. A warrant for the arrest of Byers was issued, and a prosecution against him was begun. Certain representations against Byers were made to the board of school directors, but they took no action. The terms of office of two of the directors were about to expire, and two directors were to be elected at the November 1947 municipal election. Byers was also a justice of the peace, and he was a candidate for reëlection. A group of citizens decided to attempt, by means of stickers on the ballots, to elect two persons as directors who would favor the dismissal of Byers and to defeat Byers as justice of the peace, and their purposes were achieved at the election. Shortly after the election, as hereinbefore found by the court, an unincorporated league called Citizens League of Wheatfield Township was formed, composed of persons who sought the dismissal of Byers, and one of its main objects was to bring about his dismissal. At the December 1947 organization meeting of the school board, the two newly elected members appeared, but the three remaining members did not appear; instead they presented their resignations. The two new members selected a third member, and then the three elected two other members. Then a petition to the board containing charges against Byers was drawn up on the letter heads of the league, was signed by about 130 citizens, among whom were all of the eight incorpora-

tors of the proposed corporation, and was presented to the school board. The board held one or more hearings and then dismissed Byers as a teacher. It is a part of the history of the whole affair that Byers, upon his appeal, was reinstated as a teacher by the State Superintendent of Public Instruction and that, upon his trial in the court of quarter sessions, he was acquitted of the criminal charge. These facts are adverted to in the testimony of the witnesses. So far as this application is concerned, it makes no difference whether Byers' actions as a teacher merited his dismissal or not and whether or not he was guilty of the criminal charge. But the various hearings and trials and the discussion of the whole affair in the community and elsewhere, as well as the acts and conduct of many of the citizens, have all caused the original bad feeling to persist and grow to the extent that there is a feud between the group of citizens who were anti-Byers and the group who were pro-Byers. Prior to the incident of October 21, 1947, there was no such factional feeling among the citizens of the township. The citizens' league was organized after this incident and as a consequence of it, and it became the instrumentality of those who were seeking the dismissal of Byers. The league had 107 members at the time of the hearing, and it is likely that any group of so many persons will contain some who are hotheads and may act in a lawless manner to accomplish their ends. The great strength of this ill feeling and the danger of some unlawful action is tacitly admitted by the attorney of the incorporators in this excerpt from his brief of argument: "They (meaning the members of the league) *could* have resorted to mob violence and individuals among them *could* have resorted to force or illegal methods to obtain their ends." This feeling manifested itself in the religious meetings attended by Byers. Byers has his partisans, and they have manifested more or less ill feelings toward the members of the league. Taking

it all in all, it is a most unhealthy and unhappy condition of affairs in the township. To grant the charter will tend to intensify and perpetuate this feeling, which will be a distinct injury to the community. We cannot find and certify that the real purposes of the proposed corporation will not be injurious to the community.

*Order*

And, now, August 19, 1948, upon consideration of the articles of association of the proposed corporation named Citizens League of Wheatfield Township and the accompanying papers and the evidence taken at the hearing, the application is refused.